UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| ROBERT ALLEN, | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| *vs.* | ) | 1:11-cv-01485-JMS-DKL |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| COMMISSIONER OF THE SOCIAL SECURITY | ) | |
| ADMINISTRATION, | ) | |
| *Defendant.* | ) | |

## ENTRY REVIEWING THE COMMISSIONER'S DECISION

Plaintiff Robert Allen applied for disability and disability insurance benefits from the

Social Security Administration ("SSA") on January 22, 2009.  After a series of administrative

proceedings and appeals, including a video hearing on October 28, 2010 before Administrative

Law Judge ("ALJ") Angela Miranda, the ALJ issued a finding on March 4, 2011 that Mr. Allen

was not entitled to disability benefits.  In October 2011, the Appeals Council denied Mr. Allen's

timely request for review of the ALJ's decision, rendering that decision the final decision of the

Defendant, Commissioner of the SSA ("the Commissioner"), for the purposes of judicial review.

20 C.F.R. § 404.981.  Mr. Allen then filed this action under 42 U.S.C. § 405(g), requesting that

the Court review the ALJ's denial.

**I.**
**RELEVANT BACKGROUND**

Mr. Allen was forty-four years old at the time of his disability application on January 22,

2009. [Dkt. 12-5 at 2.]  He has a tenth-grade education. [Dkt. 12-6 at 32.]  From 1993 until

2006, he held a variety of jobs in restaurants, including positions as a cook, dishwasher, and

stocker. [*Id.* at 19.]  From 2006 until 2008, Mr. Allen worked intermittently as a forklift driver,

mail sorter, and in shipping and receiving. [Dkt. 12-2 at 43-46.]  Mr. Allen claims he is disabled

1

because of his seizure disorder, degenerative disc disease in his cervical spine, knee pain, depression, and intermittent explosive disorder.  [Dkt. 20 at 7.]  His date of last insured for purposes of disability is December 31, 2013.  [Dkt. 12-5 at 9.]

Mr. Allen began seeking treatment for his seizure disorder in September 2007.  [Dkt. 12-7 at 67.]  Due to incarceration, he amended his alleged onset date to May 2008.  [Dkt. 12-6 at 7-10.]  Thereafter, he began seeking medical treatment for his seizure disorder on January 14, 2009.  [Dkt. 12-7 at 77-80.]  He was seen in the emergency room numerous times between January 2009 and October 2010.  [Dkts. 12-9; 12-10.]  Mr. Allen met with a medical consultant for the Disability Determination Bureau ("DDB") on March 16, 2009. [Dkt. 12-7 at 90.]  Dr. M. Brill, a medical consultant for the DDB, reviewed the medical evidence on March 31, 2009 and provided a Residual Functional Capacity ("RFC") Assessment.  [*Id.* at 98-105.]  Dr. Brill established that Mr. Allen suffered from a severe impairment limiting his physical abilities.  [*Id.*]  Specifically, Dr. Brill found that Mr. Allen had certain exertional and postural limitations, [*id.* at 99-100], was limited in his ability to reach in all directions (including overhead), [*id.* at 101], and should "avoid all exposure" to hazards, such as machinery and heights, [*id.* at 102].  Another DDB medical consultant reviewed the medical evidence on July 18, 2009 and affirmed Dr. Brill's RFC assessment.  [*Id.* at 110.]

Mr. Allen received treatment at the Crisis Prevention Unit at Midtown Community Health Care Center on January 25, 2010 for anxiety and aggression.  [Dkt. 12-8 at 5.]  On February 4, 2010, Mr. Allen was diagnosed with Intermittent Explosive Disorder and Major Depressive Disorder.  [*Id.* at 12.]  At that time, he was prescribed Risperdal.  [*Id.*]  Mr. Allen continued treatment at Midtown Community Health Care Center for his mental illnesses through both therapy and medication until August 2010.  [*Id.* at 40.]

Additional facts will be provided as necessary to review Mr. Allen's denial of benefits.

## II.
### STANDARD OF REVIEW

The Court's role in this action is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). For the purpose of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008), this Court must afford the ALJ's credibility determination "considerable deference," overturning it only if it is "patently wrong." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quotations omitted).

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court *must* affirm the denial of benefits. Otherwise, the Court will remand the matter back to the SSA for further consideration; only in rare cases can the Court actually order an award of benefits. *See Briscoe v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005).

> To evaluate a disability claim, an ALJ must use the following five-step inquiry:
>
> (1) [is] the claimant…currently employed, (2) [does] the claimant ha[ve] a severe impairment, (3) [is] the claimant's impairment…one that the Commissioner considers conclusively disabling, (4) if the claimant does not have a conclusively disabling impairment,…can [he] perform h[is] past relevant work, and (5) is the claimant…capable of performing any work in the national economy[?]

*Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001) (citations omitted). After step three, but before step four, the ALJ must determine a claimant's RFC, which represents the claimant's physical and mental abilities considering all of the claimant's impairments. The ALJ uses the RFC at step four to determine whether the claimant can perform his own past relevant work and

if not, at step five to determine whether the claimant can perform other work.  *See* 20 C.F.R. §

416.920(e).

### III.
### THE ALJ'S DECISION

Using the five-step sequential evaluation set forth by the SSA, the ALJ determined that

Mr. Allen was not disabled.

At step one of the analysis, the ALJ found that Mr. Allen had not engaged in substantial

gainful activity[1] since the alleged onset date of his disability.  [Dkt. 12-2 at 13.]

At step two of the analysis, the ALJ found that Mr. Allen had the following severe

impairments: "seizure disorder described as likely partial complex with secondary

generalization; mental impairment variously described as altered mental state, depression, major

depressive disorder, dysthymia, intermittent explosive disorder, and intermittent explosive

disorder versus organic mental disorder; Hepatitis C with noted fatigue; headaches; and mild

cervical spine degenerative disc disease."  [*Id.*]

At step three of the analysis, the ALJ found that Mr. Allen did not have an impairment or

combination of impairments that met or medically equaled one of the listed impairments in 20

C.F.R. 404, Subpart P, Appendix 1.  [*Id.* at 14-15.]  Specifically, the ALJ found that Mr. Allen

did not meet listing 1.04 because medical evidence did not indicate nerve root compression,

spinal arachnoiditis, or lumbar spinal stenosis.  [*Id.* at 15.]  The ALJ found Mr. Allen did not

meet the requirements of listings 11.02 or 11.03 because he does not have epilepsy documented

by a pattern of seizures occurring more frequently than once a month, in spite of at least three

months of prescribed treatment, which interfere with daytime activity.  [*Id.*]  Although the ALJ

---

[1] Substantial gainful activity is defined as work activity that is both substantial (i.e. involves significant physical or mental activities) and gainful (i.e. work that is usually done for pay or profit, whether or not a profit is realized).  20 C.F.R. § 404.1572(a) and § 416.972(a).

noted that Mr. Allen reported that he has seizures two to three times a week, she found documentation of that frequency lacking and also found "significant evidence of noncompliance with his anti-seizure medication."   [*Id.*]   In addition, the ALJ found Mr. Allen's mental impairments did not meet the 12.02, 12.04, and 12.08 listings.  [*Id.* at 15-16.]

Before continuing to step four of the analysis, the ALJ found that Mr. Allen had the RFC to perform sedentary work as defined in 20 C.F.R. 404.1567(a) and 416. 967(a) with postural, environmental, and mental limitations.  [*Id.* at 16.]  Specifically, the ALJ found that despite his physical ailments, Mr. Allen could perform various low intensity physical tasks.  [*Id.* at 17.]  However, the ALJ did note that given Mr. Allen's seizure activity, he should "avoid (less than occasional) work place hazards such as unprotected heights and machinery with fast moving parts."  [*Id.*]   With regard to his mental impairments, intellectual capabilities, and subjective complaints related to interactions with others, the ALJ found Mr. Allen capable of carrying out simple, routine tasks, appropriately interacting with supervisors, and occasionally interacting with co-workers and the public.  [*Id.*]

In determining Mr. Allen's RFC, the ALJ followed a two-step process.  [*Id.*]  First, the ALJ determined whether there was an underlying medically determinable physical or mental impairment that could be expected to produce Mr. Allen's pain or other symptoms.  [*Id.*]  The ALJ then evaluated the intensity, persistence, and limiting effects of Mr. Allen's symptoms to determine the extent to which they limit his functioning.  [*Id.*]  Although the ALJ found that Mr. Allen did have physical and mental impairments, she determined that the evidence did not support Mr. Allen's allegations of symptoms so severe as to preclude the performance of past work.  [*Id.*]  Specifically, the ALJ found Mr. Allen's statements about the severity of his symptoms unpersuasive to the extent they were inconsistent with her RFC assessment, [*id.* at

21]; gave no weight to a notation that Mr. Allen was "unable to work" in his crisis intervention interview, [*id.*]; and gave limited weight to Mr. Allen's mother's third-party function report, [*id.* at 22]. The ALJ also gave limited weight to the DDB's physical assessment because "evidence received at the hearing level shows that [Mr. Allen] is more limited than determined by the State agency consultants." [*Id.* at 21.]

At step four of the analysis, the ALJ determined Mr. Allen was capable of performing past relevant work as a sorter. [*Id.* at 22.] Specifically, the ALJ found that work as a sorter does not require the performance of work-related activities precluded by Mr. Allen's RFC. [*Id.*] In reaching this conclusion, the ALJ relied on Mr. Allen's testimony that he performed this job while sitting down and that there was no heavy lifting involved. [*Id.*] The ALJ also relied on a Dictionary of Occupational Titles ("DOT") definition that listed the occupation as requiring sedentary exertion, and the testimony of a vocational expert ("VE"). [*Id.*]

As the ALJ determined that Mr. Allen was capable of performing past relevant work as a sorter, she did not proceed to step five of the analysis.

## IV.
### DISCUSSION

Mr. Allen challenges the ALJ's decision on several grounds. First, Mr. Allen alleges that the ALJ erred at step three in determining that his impairments were not conclusively disabling, because she did not consult a medical expert regarding whether his physical and mental impairments were equivalent to a conclusively disabling impairment. [Dkt. 20 at 25-32.] Mr. Allen further claims that the ALJ did not support her RFC findings with substantial evidence in violation of SSR 96–8p. [*Id.* at 32-33.] Finally, Mr. Allen alleges the ALJ erred at step four by finding that Mr. Allen could return to his past relevant work as a sorter and, consequently, not addressing the Commissioner's burden at step five. [*Id.* at 33-35.]

### A.  Step Three Challenge

Although Mr. Allen raises several issues regarding step three of the ALJ's analysis, the Court will limit its discussion to whether the ALJ should have obtained a medical expert's opinion regarding whether the combination of Mr. Allen's ailments were equivalent to a listed condition.  [Dkts. 20 at 25-33; 32 at 1-5.]  The Commissioner argues that, given the availability of Mr. Allen's medical records, it was within the ALJ's discretion to forgo a medical expert's opinion.  [Dkt. 26 at 4-5.]

At step three, the ALJ must consider whether a disability applicant has one or more conditions that the SSA considers conclusively disabling.  When evidence in the record indicates the possible presence of a listed impairment, "an ALJ must discuss the listing by name and offer more than a perfunctory analysis of the listing."  *Barnett,* 381 F.3d at 668 (7th Cir. 2004).  Beyond the listed conditions, an ALJ must also consider the interaction of all of a claimant's mental and physical ailments to determine whether they are medically equivalent to a listed condition.  "Even if each problem assessed separately were less serious than the evidence indicates, the combination of them might well be totally disabling."  *Martinez v. Astrue*, 630 F.3d 693, 697-98 (7th Cir. 2011) (holding the ALJ erred when it found "that Martinez's severe depression is well controlled by drugs—when she takes them—but ignored the fact that during manic spells Martinez had stopped taking her medications (a common consequence of mania)").

Further, an ALJ must obtain a medical opinion from a medical expert "[w]hen no additional medical evidence is received, but in the opinion of the administrative law judge or the Appeals Council the symptoms, signs, and laboratory findings reported in the case record suggest that a judgment of equivalence may be reasonable."  SSR 96–6p, 1996 SR LEXIS 3, *9.  "If the ALJ believes that [she] lacks sufficient evidence to make a decision, [she] must

adequately develop the record and, if necessary, obtain expert opinions." *Clifford v. Apfel*, 227 F.3d 863, 873 (7th Cir. 2000).  Requiring the ALJ to obtain medical testimony reduces the chance that the ALJ will "succumb to the temptation to play doctor and make their own independent medical findings." *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996).

In this case, although the ALJ noted that "no acceptable medical source mentioned findings equivalent in severity to the criteria of any listed impairment, individually or in combination," that did not end her obligation.  [Dkt. 12-2 at 14-15.]  Given the number and intensity of the ailments affecting Mr. Allen, the record suggests that a judgment of equivalency might have been reasonable, requiring the ALJ to obtain a medical expert's opinion under SSR 96–6p.  This is especially true in cases such as this, where there is no sufficient state medical evaluation.  The ALJ stated that the DDB's "medical consultants' physical assessments are given limited weight because evidence received at the hearing level shows that [Mr. Allen] is more limited than determined by the State agency consultants."  [*Id.* at 21.]  Further, no state medical consultant ever evaluated Mr. Allen's mental impairments, and no medical expert ever testified as to whether Mr. Allen's physical and mental impairments, when considered collectively, were medically equivalent to a listed condition.  Without adequate medical testimony, the ALJ failed to demonstrate that she considered all of Mr. Allen's impairments collectively as required by *Martinez*.  630 F.3d at 697-99.  Further, the ALJ failed to consider whether Mr. Allen's impairments affected his ability to properly take his medications.  [Dkt. 12-2 at 19.]

In sum, although an ALJ is not always required to obtain a medical expert's opinion, he or she must do so when a finding of equivalency may be reasonable, even when the claimant fails to provide additional medical testimony.  Therefore, this matter should be remanded in order to obtain an expert medical opinion as to whether Mr. Allen's physical and mental

ailments, in combination, are medically equivalent to a listed condition. Relevant to this analysis, among other issues, is whether or not Mr. Allen's noncompliance with taking his seizure medication was willful, or the result of his mental and cognitive ailments.

### B. RFC Analysis Challenge

Although the Court has already determined it to be appropriate to remand this matter, for judicial economy it will address other issues raised that are likely to be present on remand.  Mr. Allen contends that the ALJ's RFC analysis was flawed because the ALJ failed to take into account the seriousness of Mr. Allen's ailments and failed to perform a function-by-function analysis.  [Dkt. 20 at 32-33.]  The Commissioner asserts that the ALJ sufficiently supported her RFC determination through the use of a narrative discussion of all the material evidence.  [Dkt. 26 at 15-17.]

An RFC assessment must discuss both medical facts and nonmedical evidence, and describe how that evidence supports each conclusion.  SSR 96-8p, 1996 SSR LEXIS 5, *19.  Ordinarily, a reviewing court grants an ALJ's credibility determinations special deference.  *Powers v. Apfel,* 207 F.3d 431, 435 (7th Cir. 2000).  However, an ALJ may not disregard a claimant's testimony about the intensity or frequency of their symptoms "solely because there is no objective medical evidence supporting it."  *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009).  Conclusory determinations of credibility are also expressly prohibited.  *Parker v. Astrue*, 597 F.3d 920, 921-22 (7th Cir. 2010) (language in ALJ's opinion that claimant's statements regarding symptoms were not entirely credible was "not only boilerplate; [but] meaningless boilerplate," and "yield[ed] no clue to what weight the trier of fact gave the testimony").

In this case, the ALJ's determination regarding the frequency of Mr. Allen's seizures is problematic.  The ALJ stated "[w]hile there are multiple trips to the emergency room with

complaints of seizures, there is no objective evidence or reports of witnessed seizures to support that a seizure occurred and the episodes appear to be sporadic." [Dkt. 12-2 at 19.] The ALJ provided no reasoning as to why she was discounting the significant medical evidence indicating that Mr. Allen's seizures occurred frequently, [*see, e.g.,* dkt. 12-9 at 82, 90, 100, 116, 120], or which seizure complaints lacked credibility. Further, the record indicates that on at least one occasion, Mr. Allen's girlfriend witnessed him having back-to-back seizures while he was sleeping. [Dkt. 12-9 at 29.]

The ALJ further erred in speculating that Mr. Allen's impaired mental status following a seizure "would probably not occur if the claimant were compliant with his seizure medication." [Dkt. 12-2 at 20.] There is nothing in the record that supports that conclusion. Further, the ALJ failed to take into consideration numerous concerns expressed by doctors about Mr. Allen's cognitive abilities. [*See, e.g.,* dkt. 12-9 at 20-21 (expressing a desire to "enlist more of [Mr. Allen's] family in his treatment issues") and 30 ("[c]ertainly with this patient, I would prefer to keep him on a once-daily dose if possible, as he seems to be so slow cognitively").]

The ALJ's conclusory credibility determination of both Mr. Allen and his mother, Rosie Thompson, is also problematic. The ALJ's statement that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not persuasive to the extent they are inconsistent with the above residual functional capacity assessment," [dkt. 12-2 at 21], is exactly the type of summary conclusion disallowed by SSR 96–7P. *Parker*, 597 F.3d at 921-22. Further, the ALJ failed to specify what part of Ms. Thompson's third-party function report "is given limited weight as it is not entirely supported by the objective medical evidence." [Dkt. 12-2 at 22.] The ALJ failed to build a logical bridge supporting her determination that Mr. Allen's or Ms. Thompson's testimony is not credible.

Although the ALJ's RFC analysis does provide a narrative discussion of the evidence, the ALJ failed to adequately explain why she was discounting relevant evidence about the intensity, persistence, and limiting effects of Mr. Allen's symptoms before determining the extent to which they limit his functioning.   Therefore, this matter should be remanded to the ALJ for further development.

### C.  Step Four Challenge

Mr. Allen alleges a flawed finding at step four because the ALJ relied on the mistaken testimony of the VE.  [Dkt. 20 at 33-35.]   The Commissioner contends that because the ALJ considered his past work "as actually performed," the VE's error was insignificant.  [Dkt. 26 at 17-18.]

Step four of the analysis involves the ALJ's determination as to whether a claimant can perform his or her past relevant work.   20 CFR § 416.920(e).   There are three tests for determining whether a claimant has retained the capacity to perform past relevant work: (1) "whether the claimant retains the capacity to perform a past relevant job based on a broad generic, occupational classification of that job…"; (2) "whether the claimant retains the capacity to perform the particular functional demands and job duties peculiar to an individual job"; and (3) "whether the claimant retains the capacity to perform the functional demands and job duties of the job as ordinarily required by employers throughout the national economy."  SSR 82-61, 1982 SSR LEXIS 31, *3-4.

When evaluating past work "as actually performed" an ALJ must obtain "[d]etailed information about strength, endurance, manipulative ability, mental demands and other job requirements" as appropriate.  SSR 82-62, 1982 SSR LEXIS 27, *8.  The ALJ "must specify the duties involved in a prior job and assess the claimant's ability to perform the specific tasks."

*Nolen v. Sullivan*, 939 F.2d 516, 519 (7th Cir. 1991); *see also Kenefick v. Astrue*, 535 F.Supp.2d 898, 909 (N.D. Ill. 2008).  A description of past work is sufficient if it accurately describes the duties and activities involved.  *See, e.g., Orlando v. Heckler*, 776 F.2d 209, 215 (7th. Cir. 1985) (claimant's description of past janitorial job as including using a mop, broom, and vacuum; cleaning toilet bowls and mirrors; never using big machines because of back and leg problems; walking six hours a day, standing four hours a days, and sitting two hours a day; bending frequently and reaching occasionally; and lifting a half gallon bucket of water twice a day was sufficient for ALJ to reach informed conclusion regarding demands of his past work).  An ALJ cannot evaluate past work based on generic descriptions such as "sedentary" – he or she must consider the specific duties of the past work.  *Smith v. Barnhart*, 388 F.3d 251, 252 (7th Cir. 2004).

The ALJ questioned Mr. Allen about his previous work as a mail sorter during the video hearing.  Mr. Allen testified as follows:

Q: …We also have in 2007 CBS Personnel Services. Were you doing the same type of work [shipping and receiving with a fork truck] for that personnel service?

A: I was – I was working – I was putting – sorting mail, putting – I was in the mail – I believe that's the one I was in the mail. So–

Q: Okay. And when you were sorting the mail, were you doing that sitting down, or were you standing up, walking – [INAUDIBLE]?

A: I was – that's – I remember that because I was sitting down. I don't get to – I – yeah, they – yeah, they fired me.

Q: Okay.

A: Yeah.

Q: And when you were sitting, how much lifting and carrying when you were doing that mail sorting?

A: I don't –the lifting and carrying? I –

12

Q: Do you – were you lifting heavy items, heavy packages? Or were you just lifting small things like –

A: Yeah, that was – that was easy. Just – I'd get – I'd fill up a little container, mailbox thing, and I think I had to take it to somebody else? Then they –I didn't pack –

Q: [INAUDIBLE]—

A: I didn't have to –

Q: Okay, you had to fill up the containers, and then you had to carry the container of [sic] to another place, is that correct?

A: Yeah.

Q: Okay.

A: Yeah, I believe so.

[Dkt. 12-2 at 44-46.]

Following Mr. Allen's testimony about his work experience, the VE testified that he had enough information to classify Mr. Allen's past work. [*Id.* at 49-50.] The ALJ then instructed the VE to inform her if his opinion conflicted with information in the DOT and if the work activities Mr. Allen actually performed differed from those in the DOT. [*Id.* at 54.] The VE testified that Mr. Allen's work as a sorter was DOT # 739.687-182,[2] and was classified as requiring "sedentary"[3] physical demands. [*Id.* at 55.] The ALJ then asked the VE several

---

[2] DOT #739.687-182, "Table Worker," is defined as someone who "[e]xamines squares (tiles) of felt-based linoleum material passing along on conveyor and replaces missing and substandard tiles." http://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOT07D.HTM.

[3] "Sedentary Work" is the least physically demanding classification and requires "[e]xerting up to 10 pounds of force occasionally (Occasionally: activity or condition exists up to 1/3 of the time) and/or a negligible amount of force frequently (Frequently: activity or condition exists from 1/3 to 2/3 of the time) to lift, carry, push, pull, or otherwise move objects, including the human body. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required only

hypothetical questions concerning what work would be available for a person with varying degrees of limitations.  [*Id*. at 55-57.]

The ALJ found that Mr. Allen was capable of returning to his work as a "sorter as actually performed."  [*Id.* at 22.]  In reaching this conclusion the ALJ relied on both Mr. Allen's and the VE's testimony.  [*Id*.]

However, both the ALJ and the VE mistakenly relied on the DOT listing for a table worker rather than a mail sorter.  [*Id.* at 22, 55.]  The correct listing, DOT # 209.687-026,[4] lists the mail sorter occupation as requiring "light work" rather than "sedentary" physical activity.[5] This specifically violates the ALJ's RFC, which restricts Mr. Allen to sedentary work.  Either the VE did not understand Mr. Allen's description, or he failed to read the job description beyond the title.  Either way, the ALJ's reliance on the VE's mistaken testimony is problematic.

---

occasionally and all other sedentary criteria are met."   http://www.oalj.dol.gov/PUBLIC/DOT/ REFERENCES/DOTAPPC.HTM.

[4]  The description reads in part "[s]orts incoming mail for distribution and dispatches outgoing mail: Opens envelopes by hand or machine. Stamps date and time of receipt on incoming mail. Sorts mail according to destination and type, such as returned letters, adjustments, bills, orders, and payments." http://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOT02A.HTM.

[5] DOT definitions are followed by codes that refer to individual requirements of the job.  The "mail clerk" description is followed by a "Strength: L." "L" stands for "Light Work," and is described as requiring "[e]xerting up to 20 pounds of force occasionally, and/or up to 10 pounds of force frequently, and/or a negligible amount of force constantly (Constantly: activity or condition exists 2/3 or more of the time) to move objects. Physical demand requirements are in excess of those for Sedentary Work. Even though the weight lifted may be only a negligible amount, a job should be rated Light Work: (1) when it requires walking or standing to a significant degree; or (2) when it requires sitting most of the time but entails pushing and/or pulling of arm or leg controls; and/or (3) when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible. NOTE: The constant stress and strain of maintaining a production rate pace, especially in an industrial setting, can be and is physically demanding of a worker even though the amount of force exerted is negligible."   http://www.oalj.dot.gov/PUBLIC/DOT REFERENCES/DOTAPPC.HTM.

The Commissioner's argument that the mistake is irrelevant because of the ALJ's determination that Mr. Allen could perform the job "as actually performed" is unpersuasive. Perhaps if Mr. Allen had provided a more detailed and coherent description of his past work, the VE's testimony would be less relevant. However, unlike the description in *Orlando*, the actual duties of the job remain unclear. The testimony leaves unanswered how often Mr. Allen carried full containers, how far he was required to walk, how heavy the containers were, how much interaction he had with other employees, and how often he took breaks. Furthermore, it is unclear whether the mail clerk job, like the tile sorting job, requires being around machinery (like conveyor belts) that could be considered "workplace hazards" and thus inconsistent with the RFC.

In the absence of the VE's flawed testimony, there is simply not enough information supporting the ALJ's determination. Therefore, this matter should be remanded so that the ALJ can properly determine whether or not Mr. Allen retained the ability to perform previous relevant work. If he or she determines that Mr. Allen cannot return to previous relevant employment, the ALJ should proceed to step five of the analysis.

### D.  Cherry-Picking From the Evidence

As previously mentioned, the Court is mindful that the standard of review on a challenge to an ALJ's findings is highly deferential. But that deference is not limitless, and "an ALJ has the obligation to consider *all* relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding." *Denton v. Astrue,* 596 F.3d 419, 425 (7th Cir. 2010) (citation omitted) (emphasis added). However, the ALJ in this case was selective in her discussion and interpretation of the facts, and such cherry-picking was error.

15

For example, while discussing Mr. Allen's medical history, the ALJ stated that Mr. Allen saw a neurologist who noted that his "head CT taken a week earlier was unremarkable." [Dkt. 12-2 at 18.] However, the doctor's full notation states "CT that was unremarkable *except for a remote fracture at the lateral aspect of the right ethmoid sinus*." [Dkt. 12-9 at 29 (emphasis added).] It is not clear whether the ALJ misread the note, or believed the fracture was insignificant. Either way, the omission of the second half of the sentence improperly distorts the evidence.

The ALJ also omitted significant evidence when discussing the frequency of Mr. Allen's seizures. Although she pointed to the fact that Mr. Allen did not have as many trips to the hospital during his period of medication compliance, [dkt. 12-2 at 19], she failed to mention that he was told by his doctor that it was not necessary to go to the hospital after every seizure, [dkt. 12-9 at 24]. Again, the ALJ might have considered this information, but by failing to include it in her decision, the Court has no way of knowing whether she did.

Finally, there were several instances where the ALJ misrepresented the evidence. For example, when discussing evidence of normal social activity, the ALJ stated "[t]here is also a note dated June 19, 2009 that shows that the claimant was riding a bike and was with a friend." [Dkt. 12-2 at 15.] The emergency room note actually states Mr. Allen was riding a bicycle, woke up on the ground, and that the seizure was "witnessed by friend who brought to ER." [Dkt. 12-10 at 42.] The ALJ's reliance on a conclusion not supported by the evidence (that Mr. Allen was out riding bicycles with a friend, rather than simply that a friend saw him fall) to support the conclusion that he engaged in "normal social activities," [dkt. 12-2 at 15], is troubling.

16

# V.
## CONCLUSION

The ALJ erred at step three of her analysis by failing to procure testimony from a medical expert on the issue of equivalency, erred in her RFC analysis by summarily discounting evidence about the severity of Mr. Allen's ailments, and erred at step four of her analysis by relying on the VE's incorrect testimony. Additionally, the ALJ appears to have cherry-picked facts which support her conclusion, while ignoring others which contradict it. Accordingly, the Court **VACATES** the decision denying benefits and **REMANDS** this matter back to the SSA for further proceedings pursuant to 42 U.S.C. § 405(g) (sentence four). Final judgment will enter accordingly.

12/07/2012

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only:**

Timothy E. Burns
KELLER & KELLER
timb@2keller.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov